# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| REYNOLDS INNOVATIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civil Action No. 1:13-cv-533 |
| DAVID RODRIGUEZ, individually | ) | |
| and d/b/a "DEJUICE DROP SHOT | ) | |
| FLAVORZ, LLC" and | ) | |
| "EJUICEIT.COM"; and | ) | |
| DEJUICE DROP SHOT FLAVORZ, | ) | |
| LLC d/b/a "EJUICEIT.COM," | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff, Reynolds Innovations Inc. ("RII") states the following for its Complaint against Defendants (i) David Rodriguez, individually and d/b/a "DeJuice Drop Shot Flavorz, LLC" and "EJUICEIT.COM"; and (ii) DeJuice Drop Shot Flavorz, LLC d/b/a/ "EJUICEIT.COM" (collectively, "Defendants"):

## NATURE OF THE ACTION

1.     This is an action at law and in equity for trademark infringement, unfair competition and false designation of origin, and trademark dilution arising under sections 32 and 43 of the Federal Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1114, 1125; unfair or deceptive trade practices arising under N.C. Gen. Stat. §§ 75-1 *et seq.*; unfair or deceptive trade practices arising under N.M.S.A. 1978 §§ 57-12-1 *et seq.*; trademark dilution and injury to business reputation arising under N.M.S.A. 1978 § 57-

1

3B-15; and trademark infringement and unfair competition arising under the common law of the State of North Carolina and the State of New Mexico.

2. As more fully described below, without RII's authorization, Defendants have used and continue to use trademarks that are colorable imitations of, and are confusingly similar to, RII's federally-registered trademarks in the United States in connection with the sale, via the Internet, of Defendants' liquid nicotine products. In particular, Defendants have used, without RII's authorization, colorable imitations of RII's famous CAMEL and CAMEL & Design trademarks and variations thereof (collectively, the "CAMEL Marks"), and RII's CAMEL TURKISH-formative trademarks and variations thereof (collectively, the "CAMEL TURKISH Marks").

3. On information and belief, Defendants have been and continue to be engaged in the business of operating the Internet website at <www.ejuiceit.com> ("Defendants' Website"), through which Defendants actively promote and sell, among other items, "E-liquid" flavored liquid nicotine products for use with electronic cigarettes. On further information and belief, without RII's authorization, Defendants have used RII's famous and federally-registered CAMEL Marks and registered CAMEL TURKISH Marks, or colorable imitations thereof, in the advertising, manufacture, and sale of E-Liquid nicotine products, and have supplied such E-Liquid nicotine products to third parties for further distribution and sale.

4. On information and belief, without RII's authorization, Defendants have sold and shipped, and continue to sell and ship, E-Liquid nicotine products advertised under and/or bearing trademarks that are confusingly similar to and colorable imitations

2

of RII's federally-registered CAMEL Marks and CAMEL TURKISH Marks to customers in the United States.

5.      RII has not authorized or permitted Defendants to use RII's CAMEL Marks or CAMEL TURKISH Marks, or colorable imitations thereof, in connection with Defendants' E-Liquid products.  Unless enjoined by this Court, Defendants' conduct will continue to result in a likelihood of consumer confusion and irreparable injury to RII.

## PARTIES, JURISDICTION, AND VENUE

6.      RII is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business at 401 North Main Street, Winston-Salem, North Carolina.  RII is a trademark holding company and a subsidiary of R.J. Reynolds Tobacco Company.  RII is therefore the record owner, in its own right or by assignment from its predecessors-in-interest, of the CAMEL Marks and CAMEL TURKISH Marks that are at issue in this dispute, including the federal trademark registrations that are identified below.  For convenience, and unless the context indicates otherwise, the term "Reynolds" will be used to refer collectively to RII, RII's predecessors-in-interest and/or RII's corporate affiliates who use the trademarks owned by RII under authority from RII.

7.      On information and belief, Defendant David Rodriguez is a resident of New Mexico with an address at 1520 Deborah Road, Rio Rancho, New Mexico 87124.  On further information and belief, Mr. Rodriguez:

a. is an owner and officer of, and the registered agent for, Defendant DeJuice Drop Shot Flavorz, LLC, and directs and controls the business activities of Defendant DeJuice Drop Shot Flavorz, LLC; and

b. owns and operates Defendants' Website.

8. On information and belief, Defendant DeJuice Drop Shot Flavorz, LLC ("DeJuice") is a company organized under the laws of New Mexico, with an address at 1600 Trout Creek Drive NE, Rio Rancho, New Mexico 87144. On further information and belief, Defendant DeJuice conducts business via Defendants' Website.

9. This Court has subject matter jurisdiction over the federal claims alleged herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338. As to the state law claims, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(b), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege of doing business in this district. Defendants own and operate Defendants' Website, which is an interactive website that is accessible by Internet users in this district and offer goods to residents of North Carolina. The infringing products that Defendants advertise and offer under the CAMEL Marks and CAMEL TURKISH Marks, or colorable imitations thereof, and make available through Defendants' Website to purchasers in the United States, are capable of being ordered, and have been ordered, by purchasers in North Carolina, and are capable of being shipped, and have been shipped, to purchasers in North Carolina.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), in that,

4

on information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

12.     This Court has jurisdiction to enter injunctive relief, pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

13.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

14.     At all times material hereto, Reynolds has been, and currently is still, engaged in the business of manufacturing, distributing, marketing, advertising, offering for sale, and selling various types of tobacco products throughout the United States under multiple trademarks owned by RII and under authority from RII.  As more fully described below, RII's CAMEL Marks and CAMEL TURKISH Marks are registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") and are used in connection with the sale of cigarettes, among other things.  RII's products offered under the CAMEL Marks and CAMEL TURKISH Marks are sold across the United States.  RII's CAMEL Marks are famous throughout the United States, including in North Carolina and New Mexico.

15.     In addition to its traditional tobacco products, Reynolds has recently begun offering for sale in the marketplace, under the brand name VUSE, electronic cigarette products, components and accessories, which compete directly with the electronic cigarette and liquid nicotine products offered for sale by Defendants as more fully described below.

<u>CAMEL Marks</u>

16.     Beginning at least as early as 1913, Reynolds adopted and began using the distinctive designation CAMEL in interstate commerce for the purpose of identifying and distinguishing Reynolds's tobacco products from the products of other manufacturers and distributors of tobacco.  Reynolds has advertised, marketed, distributed, offered for sale, and sold its products under the CAMEL Marks continuously for 100 years.

17.     On September 30, 1919, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 126,760 for the trademark CAMEL, in stylized form as shown below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'760 Registration").

# CAMEL

The '760 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '760 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '760 Registration, together with USPTO assignment records reflecting RII's ownership of the '760 Registration, is attached hereto as <u>Exhibit 1</u>.

18.     On April 29, 1986, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 1,391,824 for the trademark CAMEL & Design, shown

6

below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'824 Registration").



The '824 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '824 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '824 Registration, together with USPTO assignment records reflecting RII's ownership of the '824 Registration, is attached hereto as Exhibit 2.

19. On August 30, 1988, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 1,502,414 for the trademark CAMEL, in stylized form as shown below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'414 Registration")



The '414 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to

the provisions of 15 U.S.C. § 1065.  The '414 Registration therefore constitutes

conclusive evidence of the validity of the mark shown therein and of the registration of

said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark

in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate

of Registration for the '414 Registration, together with USPTO assignment records

reflecting RII's ownership of the '414 Registration, is attached hereto as Exhibit 3.

     20.     On February 20, 2007, RII's predecessor-in-interest was granted U.S.

Trademark Registration No. 3,211,464 for the trademark CAMEL, in standard characters,

on the USPTO's Principal Register for use in connection with "snuff, namely snus" (the

"'464 Registration").  The '464 Registration, which RII duly acquired by assignment

from its predecessors-in-interest, has become incontestable by virtue of long and

continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '464

Registration therefore constitutes conclusive evidence of the validity of the mark shown

therein and of the registration of said mark, of RII's ownership of said mark, and of RII's

exclusive right to use said mark in commerce in connection with "snuff, namely snus."  A

true and accurate copy of the Certificate of Registration for the '464 Registration,

together with USPTO assignment records reflecting RII's ownership of the '464

Registration, is attached hereto as Exhibit 4.  (The '760, '824, '414, and '464

Registrations are referred to collectively hereinafter as the "CAMEL Registrations," and

the trademarks shown therein, and the common law equivalents of such trademarks, are

hereinafter referred to as the "CAMEL Marks.")

21.     RII owns, *inter alia*, the CAMEL Registrations, the CAMEL Marks, and all the goodwill associated therewith in the United States.  The CAMEL Registrations remain valid, subsisting, and uncancelled, and have become incontestable as described above.

22.     The CAMEL Marks are famous trademarks that are widely recognized by the general consuming public across the United States as a designation of the source of Reynolds's goods.

23.     The CAMEL Marks inherently serve to distinguish Reynolds's tobacco products from those of others.  The CAMEL Marks are recognized by the general consuming public as a designation of the source of Reynolds's products and, as a result of Reynolds's long and continuous use and promotion of the CAMEL Marks throughout the United States, consumers of tobacco products recognize the CAMEL Marks as symbols of the highest quality of tobacco products, and associate and identify the CAMEL Marks with Reynolds or with a single source.  Reynolds derives substantial goodwill and value from this identification by the consuming public and the trade.

CAMEL TURKISH Marks

24.     Beginning at least as early as 1913, Reynolds adopted and began using trademarks incorporating the distinctive designation CAMEL TURKISH, along with other word and/or design elements, in interstate commerce for the purpose of identifying and distinguishing Reynolds's tobacco products from the products of other manufacturers and distributors of tobacco.  Reynolds has advertised, marketed, distributed, offered for sale, and sold its products under CAMEL TURKISH-formative trademarks continuously

9

for 100 years.

25.    On January 4, 1927, RII was granted U.S. Trademark Registration No. 222,446 for the trademark CAMEL TURKISH & DOMESTIC BLEND CIGARETTES & Design, shown below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'446 Registration").



A true and accurate copy of the Certificate of Registration for the '446 Registration, together with USPTO assignment records reflecting RII's ownership of the '446 Registration, is attached hereto as Exhibit 5.

26.    On September 17, 2002, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 2,620,063 for the trademark CAMEL TURKISH GOLD, in standard characters, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'063 Registration"). The '063 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '063 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's

exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '063 Registration, together with USPTO assignment records reflecting RII's ownership of the '063 Registration, is attached hereto as <u>Exhibit 6</u>.

27.    On August 12, 2003, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 2,749,434 for the trademark CAMEL TURKISH JADE & Design, shown below, on the USPTO's Principal Register for use in connection with "cigarettes made of a blend of Turkish and other varieties of tobacco" (the "'434 Registration").



The '434 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '434 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes made of a blend of Turkish and other varieties of tobacco." A true and accurate copy of the Certificate of Registration for the '434 Registration, together with USPTO assignment records reflecting RII's ownership of the '434 Registration, is attached hereto as <u>Exhibit 7</u>.

11

28. On January 2, 2007, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 3,194,975 for the trademark CAMEL TURKISH SILVER, in standard characters, on the USPTO's Principal Register for use in connection with "cigarettes made of a blend of Turkish and other varieties of tobacco" (the "'975 Registration"). The '975 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '975 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes made of a blend of Turkish and other varieties of tobacco." A true and accurate copy of the Certificate of Registration for the '975 Registration, together with USPTO assignment records reflecting RII's ownership of the '975 Registration, is attached hereto as Exhibit 8. (The '446, '063, '434, and '975 Registrations are referred to collectively hereinafter as the "CAMEL TURKISH Registrations," and the trademarks shown therein, and the common law equivalents of such trademarks, are hereinafter referred to as the "CAMEL TURKISH Marks.")

29. RII owns, *inter alia*, the CAMEL TURKISH Registrations, the CAMEL TURKISH Marks, and all the goodwill associated therewith in the United States. The CAMEL TURKISH Registrations remain valid, subsisting, and uncancelled, and have become incontestable as described above.

30.     The CAMEL TURKISH Marks are widely recognized by the general consuming public across the United States as a designation of the source of Reynolds's goods.

31.     The CAMEL TURKISH Marks inherently serve to distinguish Reynolds's tobacco products from those of others.  The CAMEL TURKISH Marks are recognized by the general consuming public as a designation of the source of Reynolds's products and, as a result of Reynolds's long and continuous use and promotion of the CAMEL TURKISH Marks throughout the United States, consumers of tobacco products recognize the CAMEL TURKISH Marks as symbols of the highest quality of tobacco products, and associate and identify the CAMEL TURKISH Marks with Reynolds or with a single source.  Reynolds derives substantial goodwill and value from this identification by the consuming public and the trade.

## Defendants' Unlawful Acts

32.     On information and belief, Defendants operate Defendants' Website which advertises, offers for sale, and sells, among other things, liquid nicotine products called "E-Liquid" that are used in connection with electronic cigarettes.

33.     Defendants' Website offers E-Liquid nicotine products in various flavors, including a number of flavors categorized as "Drop Shot Herbs."  Printouts of web pages from Defendants' Website are attached hereto as Exhibit 9.

34.     On information and belief, Defendants have offered for sale and sold through Defendants' Website various E-Liquid nicotine products advertised under and/or bearing (a) the CAMEL Marks, or marks that are confusingly similar to and colorably

13

imitate the CAMEL Marks, and (b) the CAMEL TURKISH Marks, or marks that are confusingly similar to and colorably imitate the CAMEL TURKISH Marks.  *See* <u>Exhibit 9</u>.  Hereinafter, these E-Liquid nicotine products advertised, offered for sale, and sold by Defendants will be referred to as the "Infringing Products."

35.     Among the "Drop Shot Herbs" flavors of E-Liquid products advertised and offered on Defendants' Website are products identified as "Turkish The Camel Type." *See* <u>Exhibit 9</u>.  Examples of Defendants' unauthorized use of RII's CAMEL Marks and CAMEL TURKISH Marks on Defendants' Website are shown  in Figures 1 – 2 below and in <u>Exhibit 9</u>.

Fig. 1: ("Turkish The Camel Type" at
<http://www.ejuiceit.com/apps/webstore/products/show/3006321>):



Fig. 2 ("Turkish The Camel Type" at
<http://www.ejuiceit.com/apps/webstore/stores/view_cart>):



36.    On information and belief, Defendants have sold and continue to sell the
Infringing Products through Defendants' Website to purchasers throughout the United
States, including in North Carolina and New Mexico.

37.    A bottle of the Infringing Products, as received by a purchaser in North
Carolina who ordered the product identified on Defendants' Website as "Turkish The
Camel Type" (*see* Figs. 1 - 2), displays the designation "TURKISH."  Exhibit 10 includes
true and accurate printouts of photographs of an Infringing Product.

38. Upon information and belief, Defendants have also supplied Infringing Products to other persons or entities, including but not limited to the Defendants named in *Reynolds Innovations Inc. v. Spargo, et al.*, No. 1:13-cv-00197 (M.D.N.C. 2013), for further distribution and sale by those entities.

39. Reynolds did not and does not manufacture, distribute, market, offer for sale, or sell any liquid nicotine products under the CAMEL Marks or CAMEL TURKISH Marks.

40. RII has not authorized, and does not authorize, Defendants' use of the CAMEL Marks or CAMEL TURKISH Marks, or colorable imitations thereof, in connection with the advertisement or sale of Defendants' E-Liquid products or any other products of Defendants.

## FIRST CLAIM FOR RELIEF
### (Infringement of Federally Registered Trademarks under 15 U.S.C. § 1114)

41. The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

42. Defendants' unauthorized use of the registered CAMEL Marks and Defendants' sale of Infringing Products are likely to cause confusion, mistake, or deception among consumers as to the source, origin, or sponsorship of such products. The consuming public is likely to believe that Defendants' Infringing Products are products authorized by RII for sale under the CAMEL Marks, partaking of the same qualities and characteristics as products bearing the CAMEL Marks, when such is not the case.

16

43. By their unauthorized sale of the Infringing Products, Defendants have infringed and continue to infringe the registered CAMEL Marks as shown in the CAMEL Registrations, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

44. Defendants' unauthorized use of the registered CAMEL TURKISH Marks and Defendants' sale of Infringing Products are likely to cause confusion, mistake, or deception among consumers as to the source, origin, or sponsorship of such products. The consuming public is likely to believe that Defendants' Infringing Products are products authorized by RII for sale under the CAMEL TURKISH Marks, partaking of the same qualities and characteristics as products bearing the CAMEL TURKISH Marks, when such is not the case.

45. By their unauthorized sale of the Infringing Products, Defendants have infringed and continue to infringe the registered CAMEL TURKISH Marks as shown in the CAMEL TURKISH Registrations, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

46. Defendants' unauthorized sale of their Infringing Products, and Defendants' unauthorized use of the CAMEL Marks and CAMEL TURKISH Marks, or colorable imitations thereof, in connection with the advertisement and sale of such products, as alleged above, was intentionally done with a view and purpose of trading on and benefiting from the substantial reputation and goodwill in the United States associated with the CAMEL Marks and CAMEL TURKISH Marks.

47. Defendants' acts of trademark infringement, as alleged herein, have injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct

17

and proximate result of Defendants' illegal conduct. In addition, Defendants have been unjustly enriched by reason of their trademark infringement in that they have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

48.     Defendants' trademark infringement as alleged herein has caused, is causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to RII's business, reputation, and goodwill, unless Defendants' unlawful conduct is enjoined by this Court.

49.     RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their infringing use of the CAMEL Marks and CAMEL TURKISH Marks in connection with the offering for sale and sale of liquid nicotine products or related products, and the costs of this action.

50.     Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

**SECOND CLAIM FOR RELIEF**
**(Federal Unfair Competition, False Representation, and**
**False Designation of Origin under 15 U.S.C. § 1125(a))**

51.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

52.     Defendants' unauthorized use of the CAMEL Marks in connection with the sale of Defendants' Infringing Products constitutes unfair competition, false representation, and false designation of origin in violation of § 43(a) of the Lanham Act,

18

15 U.S.C. § 1125(a), and is causing and, unless enjoined by this Court, will continue to cause confusion, to cause mistake, or to deceive purchasers and consumers as to the source, origin, or sponsorship of Defendants' products.

53.     Defendants' unauthorized use of the CAMEL TURKISH Marks in connection with the sale of Defendants' Infringing Products constitutes unfair competition, false representation, and false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and is causing and, unless enjoined by this Court, will continue to cause confusion, to cause mistake, or to deceive purchasers and consumers as to the source, origin, or sponsorship of Defendants' products.

54.     As a direct and proximate result of Defendants' unfair competition, false representation, and false designation of origin as herein alleged, RII has suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill.  Defendants' unfair competition, false representation, and false designation of origin has caused and will continue to cause RII to lose sales to which it would otherwise be entitled, unless such unlawful conduct is enjoined by this Court.

55.     RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their unauthorized use of the CAMEL Marks and CAMEL TURKISH Marks in connection with the offering for sale and sale of liquid nicotine products or related products, and the costs of this action.

56. Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

## THIRD CLAIM FOR RELIEF
### (Dilution of Federally Registered Trademarks under 15 U.S.C. § 1125(c))

57. The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

58. The CAMEL Marks are famous trademarks under 15 U.S.C. § 1125(c)(2)(A), in that they are widely recognized by the general consuming public of the United States as a designation of the source of Reynolds's goods. The CAMEL Marks became famous long prior to Defendants' unlawful use of the CAMEL Marks, or colorable imitations thereof, as alleged herein.

59. Defendants' use of the CAMEL Marks, or colorable imitations thereof, in connection with the unauthorized sale in the United States of their Infringing Products is likely to dilute RII's famous CAMEL Marks, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), by lessening their capacity to identify and distinguish Reynolds exclusively as the source of products in the United States bearing or provided under the famous CAMEL Marks and by harming the reputation and goodwill of the famous CAMEL Marks.

60. Defendants' unauthorized use of the CAMEL Marks in connection with the sale in the United States of Defendants' Infringing Products is intended and has the effect of trading on Reynolds's reputation and causing dilution of the famous CAMEL Marks.

61.     On information and belief, Defendants do not own any federal or state registrations or trademark applications for any mark that includes, in whole or in part, any of the CAMEL Marks, and Defendants cannot assert any rights in the CAMEL Marks that are prior to RII's first use, actual or constructive, of the CAMEL Marks.

62.     Defendants' trademark dilution as herein alleged has injured and will continue to injure RII in that RII has suffered and will continue to suffer damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct, unless such unlawful conduct is enjoined by this Court.  In addition, Defendants have been unjustly enriched by reason of their acts of trademark dilution in that they have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

63.     RII is entitled to recover all damages sustained by Defendants' actions, all profits realized by Defendants through their unlawful use of the CAMEL Marks in connection with Defendants' advertisement, offering for sale, and sale of liquid nicotine products or related products, and the costs of this action.

64.     Defendants' actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendants.

### FOURTH CLAIM FOR RELIEF
**(Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1 *et seq.*)**

65.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

21

66.     Defendants' conduct as alleged above is in commerce and affects commerce in the State of North Carolina.

67.     Defendants' conduct as alleged above constitutes unfair methods of competition and unfair and deceptive acts and practices in violation of N.C. Gen. Stat. § 75-1 *et seq.*

68.     Defendants' unfair methods of competition and their unfair and deceptive trade practices as alleged herein have injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct.  In addition, Defendants have been unjustly enriched by reason of their unfair methods of competition and unfair and deceptive trade practices in that Defendants have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

69.     Defendants have willfully engaged in the acts and practices alleged above, justifying an award of attorneys' fees to RII pursuant to N.C. Gen. Stat. § 75-16.1.

## FIFTH CLAIM FOR RELIEF
### (Unfair Trade Practices under N.M.S.A. 1978 § 57-12-1 *et seq.*)

70.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

71.     Defendants' conduct as alleged above is in commerce and affects trade and commerce in the State of New Mexico.

72.     Defendants' conduct as alleged above constitutes unfair trade practices in violation of N.M.S.A. 1978 § 57-12-1 *et seq.*, the New Mexico Unfair Practices Act,

22

which is designed to protect the consuming public and legitimate businesses.

73.     Defendants' unauthorized use and representations of the CAMEL Marks and CAMEL TURKISH Marks, or colorable imitations thereof, knowingly made in connection with the sale of their Infringing Products, is causing and, unless enjoined by this Court, will continue to cause confusion, to cause mistake, or to deceive purchasers and consumers as to the source, origin, or sponsorship of Defendants' products.

74.     Defendants' deceptive and unfair trade practices as alleged herein have injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct.  In addition, Defendants have been unjustly enriched by reason of their deceptive and unfair trade practices in that Defendants have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.  Unless enjoined by this Court, Defendants' deceptive and unfair trade practices as herein alleged will continue to cause irreparable and inherently unquantifiable injury and harm to RII's business, reputation, and goodwill.

75.     Defendants have willfully and knowingly engaged in the acts and practices alleged above, justifying an award of attorneys' fees and costs to RII pursuant to N.M.S.A. 1978 § 57-12-10.

### SIXTH CLAIM FOR RELIEF
**(Trademark Dilution and Injury to Business Reputation
under N.M.S.A. 1978 § 57-3B-15)**

76.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

77.     Defendants' use of the famous CAMEL Marks as described herein is likely to dilute the distinctive quality of the CAMEL Marks, to lessen the capacity of the CAMEL Marks to identify and distinguish Reynolds's products, and to tarnish the positive associations and reputation of the CAMEL Marks.  As a result of Defendants' acts, RII has suffered and is likely to suffer irreparable injury to the distinctiveness of its marks and its business reputation.

78.     Defendants' use of the CAMEL Marks, or colorable imitations thereof, in connection with the unauthorized advertising and sale in the United States, including in New Mexico, upon information and belief, of their Infringing Products is likely to dilute the distinctive quality of RII's CAMEL Marks.

79.     Defendants' acts constitute a violation of the New Mexico anti-dilution statute, N.M.S.A. 1978 § 57-3B-15, and RII is thus entitled to injunctive relief.

### SEVENTH CLAIM FOR RELIEF
**(Common Law Trademark Infringement and Unfair Competition)**

80.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

81.     Defendants' conduct as alleged above constitutes trademark infringement and unfair competition in violation of the common law of the State of North Carolina and the State of New Mexico.

82.     Defendants' trademark infringement and unfair competition as alleged above has injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct.  In addition,

Defendants have been unjustly enriched by reason of their trademark infringement and unfair competition in that Defendants have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

83.     Unless enjoined by this Court, Defendants' trademark infringement and unfair competition as herein alleged will continue to cause irreparable and inherently unquantifiable injury and harm to RII's business, reputation, and goodwill.

84.     Defendants' wrongful conduct as above alleged was accompanied by circumstances of willfulness and deliberate indifference to the rights of RII, warranting the assessment of punitive damages.

**WHEREFORE**, RII prays the Court as follows:

1.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from any and all further unauthorized promotion, marketing, advertising, sale, offering for sale, or distribution of products under:

    a.  the CAMEL Marks, or colorable imitations thereof, including without limitation Defendants' Infringing Products; and

    b.  the CAMEL TURKISH Marks, or colorable imitations thereof, including without limitation Defendants' Infringing Products.

2.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, be preliminarily

25

and permanently enjoined from any unauthorized sale, offering for sale, or distribution of products bearing any trademark owned by RII, or any colorable imitations thereof;

3.      That RII have and recover of Defendants such actual damages as RII may prove at trial;

4.      That Defendants account to RII for all of Defendants' profits derived as a direct and proximate result of Defendants' unlawful conduct;

5.      That such damages and/or profits to which RII is entitled be trebled pursuant to 15 U.S.C. § 1117, N.C. Gen. Stat. § 75-16, and N.M.S.A. 1978 § 57-3B-16;

6.      That, in the alternative to treble damages and/or profits, RII have and recover punitive damages of Defendants;

7.      That the costs of this action, including reasonable attorneys' fees, be taxed against Defendants pursuant to N.M.S.A. 1978 § 57-12-10(C); and

8.      That the Court grant RII such other and further relief as the Court may deem just and proper.

This the 1st day of July, 2013.

*s/ William M. Bryner*

KILPATRICK TOWNSEND & STOCKTON LLP

William M. Bryner, N.C. State Bar No. 23022
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: 336-607-7300
Facsimile: 336-607-7500
wbryner@kilpatricktownsend.com

Kristin G. Garris, N.C. State Bar No. 38767
1114 Avenue of the Americas, 21st Floor
New York, New York 10036
Telephone: 212-775-8700
Facsimile: 212-775-8800
kgarris@kilpatricktownsend.com

*Attorneys for Plaintiff Reynolds Innovations Inc.*